**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **CAMILLE CURTIS**, as surviving mother ) | |
| of deceased **DAVION MIKEAL HENDERSON**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | *Case No.*: _____ |
| ) | |
| **ST. LOUIS METROPOLITAN POLLICE DEPT.** ) | *JURY TRIAL DEMANDED* |
| ) | |
| and ) | |
| ) | |
| **CITY OF ST. LOUIS, MISSOURI**, ) | |
| ) | |
| and ) | |
| ) | |
| **MATTHEW SHAW**, in his individual and ) | |
| official capacity ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Camille Curtis, as surviving mother of deceased Davion Mikeal Henderson, by and through undersigned counsel, and in support of her complaint against all Defendants, states as follows:

### Parties and Jurisdiction

1.      At all times relevant to this lawsuit, Plaintiff Camille Curtis was the mother of Decedent Davion Mikeal Henderson (hereinafter "Decedent"), and was a United States citizen and resident of St. Louis County, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

2.     At all times relevant to this lawsuit, Decedent was a 21-year old African-American male.

3.     Defendant St. Louis Metropolitan Police Department (hereinafter "SLMPD") is an instrumentality of the City of St. Louis, Missouri organized and controlled pursuant to the Statutes of the State of Missouri.

4.     Defendant City of St. Louis, Missouri (hereinafter "City of St. Louis") is a first-class city, and a political subdivision of the State of Missouri duly organized under the Constitution of Missouri.

5.     At all times relevant herein, Defendant Matthew Shaw (DSN 1024) and Police Officer Willie Haymon (DSN ????) were duly commissioned police officers of the State of Missouri, and employed by SLMPD. Defendant Shaw is sued in his individual and official capacity.

6.     At all times relevant herein, Defendant Shaw acted under color of the laws, statutes, ordinances, and regulations of the United States, the State of Missouri, and the City of St. Louis.

7.     At all times relevant herein, except as explicitly stated, Defendant Shaw acted under the management, regulations, policies, customs, practices and usages of the SLMPD and/or City of St. Louis pursuant to his authority as a law enforcement officer.

8.     The acts alleged herein occurred in the City of St. Louis, within the Eastern Division of the Eastern District of Missouri.

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction over the included Missouri state law claims pursuant to 28 U.S.C. § 1367.

11.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

### Facts Common to All Counts

12.     On January 9, 2017, Decedent was a passenger in a motor vehicle being operated within the City of St. Louis, State of Missouri; and within the Eastern Division of the Eastern District of Missouri (hereinafter "the Vehicle" or "Vehicle").

13.     The Vehicle had three occupants, all young African-American males; one juvenile.

14.     Decedent was the front-seat passenger of the Vehicle.

15.     SLMPD Officers Haymon and Defendant Shaw, who were on duty at the time, and in a marked patrol vehicle, attempted to initiate a traffic stop on the Vehicle in which Decedent was a front-seat passenger.

16.     Defendant Shaw was seated in the front-seat as a passenger of the marked patrol vehicle, and Officer Haymon was the driver.

17.     The driver of the Vehicle, in which Decedent was a front-seat passenger, allegedly attempted to evade Officer Haymon and Defendant Shaw.

18.     Officer Haymon and Defendant Shaw began following the Vehicle.

19.     Officer Haymon and Defendant Shaw could not see or identify any of the occupants inside the Vehicle because the Vehicle's windows were blacked-out with tint.

20.     During the pursuit, the driver of the Vehicle ultimately lost control, struck a curb, flipped over and came to a rest on its driver's side at angle and on a slope oriented upward at 4524 Page Blvd., St. Louis, Missouri.

21.     Officer Haymon and Defendant Shaw arrived at the crash site immediately, and parked their marked police vehicle directly behind the overturned vehicle.

22.     Defendant Shaw immediately exited his patrol car from the passenger side door, closest to the rear of the Vehicle, immediately unholstered his department-issued service weapon, and aimed it at the disabled Vehicle.

23.     Officer Haymon immediately exited the same patrol car from the driver's side door, with his service weapon drawn, and took position directly behind the Vehicle's license plate.

24.     Defendant Shaw took a couple of steps alongside the roof of the Vehicle, reached the blacked-out sunroof, and immediately fired three (3) bullets into the sunroof. Defendant Shaw was unable to identify or observe any of the occupants of the Vehicle because the blacked-out tinted sunroof provided zero visibility.

25.     Defendant Shaw's bullets into the blacked-out tinted sunroof fatally struck Decedent in his right upper chest. The high-velocity bullet tracked from right to left, piercing Decedent's lung, heart, diaphragm, liver, and stomach resting in Decedent's left peritoneal cavity causing his immediate death.

26.     Immediately after firing the first three (3) fatal bullets into the blacked-out tinted sunroof and fatally striking Decedent, Defendant Shaw took several additional steps toward the front of the Vehicle's windshield.

27.     After coming upon the front of the Vehicle's windshield, Defendant Shaw immediately fired three (3) additional bullets into Decedent's body through the front windshield.

28.     Defendant Shaw's version and alleged depiction of these events was memorialized in a SLMPD Report CN-17-001344, with supplements (hereinafter "report").

29.     Defendant Shaw's report was drafted and approved by his supervisors jointly and severally.

30.     Defendant Shaw's report omitted the first three (3) deadly volley of bullets he fired into the blacked-out tinted sunroof. Instead, Defendant Shaw justified killing Decedent by falsely stating in his report that he discharged his department issued firearm six (6) times into Decedent through the front windshield of the Vehicle, and falsely claimed in his report Decedent pointed a handgun at him through the front windshield.

31.     It is a policy, custom and practice of certain officers of the SLMPD to falsely claim and report African-American citizens pointed a handgun at them to justify these unlawful killings.

32.     Upon information and belief, the City and the SLMPD and/or police officers have previously engaged in constitutional violations similar to those set forth herein, to include but not limited to the use of unnecessary and unwarranted deadly force against African-American citizens, showing a pattern and practice, custom and usage on the part of police officers to violate the constitutional rights of African-American citizens under color of state law.

**COUNT I**
**DEFENDANT SHAW'S UNLAWFUL USE OF DEADLY FORCE**
**(Cognizable Under 42 U.S.C. § 1983)**

For Count I of Plaintiff's cause of action against Defendant Shaw, Plaintiff states:

33.     Plaintiff incorporates by reference each allegation and averment set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

34.     Defendant Shaw used deadly force against Decedent in a physically aggressive and injurious way, without cause or justification, which actions and conduct caused Decedent to sustain injuries and damages resulting in his immediate death.

35.     Defendant Shaw's use of deadly force was unnecessary and punitive.

5

36.     Defendant Shaw's manufacturing and promulgation of a false report is inexcusable and illegal.

37.     Decedent had a constitutional right to be free from the unnecessary use of deadly force.

38.     In the City of St. Louis, Defendant Shaw, under the guidance, leadership and/or direction of the SLMPD, have created and followed through with a pattern and practice of harassing, assaulting, and killing African-American citizens without justification or provocation.

39.     The use of deadly force by Defendant Shaw was unreasonable, obdurate, wanton, and intentional under the totality of the circumstances, particularly because Decedent was not resisting arrest, was not attempting to escape, was not acting violently or aggressively, or in a manner that posed any obvious danger to himself or anyone else, and therefore was in violation of Decedent's rights un the 4th and/or 14th Amendments to the United States Constitution.

40.     As a direct and proximate result of the actions of Defendant Shaw as set forth herein, Decedent was caused to sustain fatal injuries and damages which included, but were not necessarily limited to: four (4) gunshot wounds resulting in death.

41.     As a direct and proximate result of Defendant Shaw's actions, Decedent suffered physical pain and suffering, emotional pain and suffering, change in appearance, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and death.

42.     The acts of Defendant Shaw were meted out against Decedent under color of state law.

43.     The conduct of Defendant Shaw was reckless and callously indifferent to the life and constitutional rights of Decedent; malicious and wanton with respect to those rights; and an

6

award of punitive damages is warranted and necessary to punish Defendant Shaw in his individual capacity and to deter him, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Shaw for compensatory damages in an amount that is fair and reasonable to include, but not limited to, his physical injury and suffering, medical expenses, funeral expenses, his emotional pain and suffering, and his death; for punitive damages against Defendant Shaw in his individual capacity; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT II
## DEFENDANTS CITY OF ST. LOUIS AND THE SLMPD'S FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL, AND/OR DISCIPLINE
### (Cognizable Under 42 U.S.C. § 1983)

For Count II of Plaintiff's cause of action against the City of St. Louis and the SLMPD, Plaintiff states:

44.     Plaintiff incorporates by reference each allegation and averment set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

45.     Defendants City of St. Louis and the SLMPD violated the constitutional rights of Decedent as set forth herein.

46.     There exists with the SLMPD Department and/or the City of St. Louis, policies and customs, practices and usages that are so pervasive that they constitute the policies of these Defendants, that caused the constitutional deprivations of Decedent as set forth herein. The policies, customs, practices, and usages that exist are:

a.      To shoot to kill African-American subjects without reasonable cause or provocation and in violation of their constitutional rights;

b.     To ignore the Use of Deadly Force Policy of the SLMPD by encouraging and/or permitting such deadly force against African-American citizens;

c.     To engage in a course of conduct designed to cover-up and insulate police officers and City of St. Louis officials from sanction, and civil and criminal liability, when targeting African-American citizens; and

d.     To fail to adequately train, supervise, and/or discipline police officers and/or City officials concerning the practices described herein to assure compliance with City and/or SLMPD Use of Deadly Force policy, state and federal laws, and the Constitution of the United States.

47.     Alternatively, and without waiver of the foregoing, the City of St. Louis' training program was not adequate to train its police officers and city officials to properly handle reoccurring situations like the one involving Decedent, and therefore the City has a policy or custom of failing to adequately train employees/officials of the City of St. Louis and/or SLMPD.

48.     The City of St. Louis and/or the SLMPD knew that more and/or different training was needed to avoid the unjustified murder of African-Americans and other constitutional deprivations of Decedent.

49.     The SLMPD was on notice that Defendant Shaw has had numerous civil rights and excessive force complaints lodged against him.

50.     The City of St. Louis is ultimately vested with the duty, power and authority to train, supervise, discipline and otherwise control the officers of the SLMPD. The City of St. Louis failed in its duty to so train, supervise and discipline Defendant Shaw in general, and specifically to conform his conduct within constitutional constraints. Specifically, the City of St. Louis failed to adequately train, supervise and discipline officers of the SLMPD, agents of the City of St. Louis,

in the proper and lawful use of deadly force, particularly against African-American citizens; failed to train, supervise and discipline police officer witnesses with the duty to intervene and/or report transgressions, and to truthfully respond to inquiries. The City of St. Louis effectively abrogated the power to train, supervise, discipline and control officers of the SLMPD, agents of the City of St. Louis, resulting in the constitutional deprivations to Decedent as set forth herein.

51.     The actions of the SLMPD and the City of St. Louis as set forth herein were taken under color of state law.

52.     As a direct and proximate result of the actions of SLMPD and the City of St. Louis, Decedent suffered physical pain and suffering, emotional pain and suffering, change in appearance, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and death.

WHEREFORE, Plaintiff prays for judgment against the SLMPD and City of St. Louis seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his emotion pain and suffering; for the costs this action, to include, but not limited to, reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

**COUNT III**
**DECEDENT DAVION MIKEAL HENDERSON'S CLAIM FOR WRONGFUL DEATH**
**AGAINST DEFENDANT MATTHEW SHAW**
**(Cognizable Under § 537.080.1 R.S.Mo.)**

For Count III of Plaintiff's Decedent Davion Mikeal Henderson's cause of action against Defendant Shaw—in his individual capacity, Plaintiff states:

53.     Plaintiff incorporates by reference each allegation and averment set forth in the preceding paragraphs in this Complaint as though fully set forth herein.

54.     Defendant Shaw intentionally discharged his firearm into the blacked-out tinted sunroof without justification causing a reasonable apprehension of death to Decedent.

55.     Defendant Shaw fired his weapon into the blacked-out tinted sunroof striking and killing Decedent without justification or provocation, intentionally and wrongfully causing the death of Decedent.

56.     As a direct and proximate result of the unlawful conduct of Defendant Shaw described above, Decedent was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of Defendant Shaw caused or contributed to medical and funeral expenses.

57.     As a result of Decedent's death, Camille Curtis—mother—has been deprived of Decedent's valuable services, society, companionship, comfort, instruction, guidance, counsel, training, support, love, affection, and income.

58.     Plaintiff is entitled to recover for all damages, including pain and suffering experienced by Decedent, for which Decedent would be entitled to claim had death not ensued.

59.     The conduct of Defendant Shaw was reckless and callously indifferent to the rights of Decedent, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish Defendant Shaw in his individual capacity and to deter him, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Shaw seeking money damages against him for compensatory damages in an amount that is fair and reasonable to include, but not be limited to, his physical injury and suffering, medical expenses, funeral expenses, his emotional pain and suffering, and death; for the costs this action, to include, but not limited to, reasonable attorneys' fees; for punitive damages against Defendant Shaw in this individual

capacity; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

Respectfully submitted,

**DERRICK R. WILLIAMS**
**Attorney & Counselor at Law, LLC**

By:    /s/ *Derrick R. Williams*
Derrick R. Williams, MO Bar: 53416
Pierre Laclede Center
7733 Forsyth Blvd., 11th Floor
Clayton, MO 63105
Telephone: 314.296.6177
Facsimile: 314.754.9591
email: attydrwilliams@hotmail.com
***ATTORNEY FOR PLAINTIFF***